UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT D. KORNAGAY,

                    Petitioner,

-vs-                                              Case No.   3:08-cv-60-TJC-JBT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et. al.,

                    Respondent.

_____/

## ORDER

**I.      Status**

        Petitioner, an inmate of the Florida penal system, initiated this case by filing a *pro se*

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.   (Doc. 1).   Petitioner

subsequently filed an Amended Petition and Respondents filed Motion to Dismiss the Amended

Petition as Untimely.   (Docs. 13, 21).   Petitioner filed a Reply to the Motion and argued that he

was entitled to equitable tolling and raised actual innocence arguments.   (Doc. 22).

        Respondents filed a Response to the Reply and stated that they accepted Petitioner's

explanation and did not oppose Petitioner's claim of entitlement to equitable tolling with respect

to 266 days.   (Doc. 26).   In light of Respondents' concession, the Court found that the Motion

to Dismiss the Amended Petition was moot.   (Doc. 38).   The Court also granted Petitioner's

Motion for Leave to File a Second Amended Petition.   Id.   Petitioner filed the Second Amended

Petition (Doc. 39), Respondents filed a Response (Doc. 41), and Petitioner filed a Reply to the

Response.   (Doc. 43).   By Order dated April 25, 2014, the Court directed Respondents to file

a Supplemental Response.  (Doc. 47).  Respondents have complied with the Order and the Supplement is before the Court.  (Doc. 48).  Thus, the Second Amended Petition is ripe for review.

## II.    Background and Procedural History

In 2002, Petitioner was charged with robbery with a deadly weapon and sexual battery with a weapon.  (Doc. 8, Ex. B).  Petitioner was tried before a jury and was found guilty on all charges.  The Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida sentenced Petitioner to consecutive terms of life imprisonment.  (Doc. 8, Ex. B).  Petitioner filed a motion to correct a sentencing error in the trial court pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).  (Doc. 29, Ex. P).  On June 19, 2003, Petitioner's motion was granted and his sentences were ordered to run concurrently.  Id.  Petitioner, through counsel, then filed his initial brief pursuant to Anders v. California, 386 U.S. 738 (1967).[1]

On March 12, 2004, the First DCA per curiam affirmed Petitioner's judgment and sentence.  Kornagay v. State, 869 So.2d 545 (Fla. 1st DCA 2004).  On July 22, 2004, Petitioner filed a post-conviction motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure.  (Doc. 8, Ex. D). The motion was dismissed without prejudice after the state court granted Petitioner's motion for voluntary dismissal.  (Doc. 8, Ex. E).  Through counsel, Petitioner filed another 3.850 motion and an amended motion.  (Doc. 8, Exs. F, G).  The state

---

[1]Petitioner also filed a motion for permission to file a pro se initial brief.   According to the state docket, Petitioner did not file a pro se initial brief.

court summarily denied the amended motion without conducting an evidentiary hearing.   (Doc. 8, Ex. H).   Petitioner appealed the denial which was dismissed for Petitioner's failure to comply with prior orders.   (Doc. 8, Exs. I, J).   On May 13, 2007, Petitioner filed a motion to reinstate his post-conviction appeal.   (Doc. 8, Ex. K).   The court of appeal subsequently granted Petitioner's motion to reinstate the appeal on June 6, 2007.   (Doc. 8, Ex. L).   The First DCA *per curiam* affirmed the summary denial of post-conviction relief.   (Doc. 8, Ex. M).   Mandate issued on November 7, 2007.   Id.

Petitioner filed his original federal habeas Petition in this Court on January 14, 2008 under the mailbox rule.[2]   (Doc. 1).   During the pendency of his federal case, Petitioner filed another 3.850 motion on February 22, 2008.   (Doc. 43, Ex. AA).[3]   On July 20, 2008, Petitioner filed a motion to dismiss the post-conviction motion.   (Doc. 48, Ex. II).   The state court granted the motion on September 16, 2008.   (Doc. 48, Ex. JJ).

Petitioner filed his Amended Petition with this Court on June 2, 2008.   (Doc. 13).   On March 5, 2009, Petitioner filed another 3.850 motion in state court.   (Doc. 29, Ex. EE).   The motion was denied on May 21, 2010 and Petitioner appealed the denial.   (Doc. 29, Ex. FF, GG).   The First DCA affirmed the denial and mandate was issued on October 26, 2010.   (Doc.

---

[2]The "prison mailbox rule" provides that a prisoner's documents are deemed filed at the moment the prisoner delivers them to prison authorities for forwarding to the court clerk.   Houston v. Lack, 487 U.S. 266 (1988).

[3]Petitioner's exhibit reflects that he mailed his motion on February 22, 2008.   (Doc. 43, Ex. AA).   Respondents agree that Petitioner filed another 3.850 motion, but contend that the clerk of the court's copy is illegible with respect to the date that it was delivered to the Department of Corrections for mailing.   (Doc. 48, Ex. HH).

3

29, Ex. GG).  With leave of this Court, on December 20, 2010, Petitioner filed his Second

Amended Petition.[4]  (Doc. 39).

## III.    Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider

whether such a hearing could enable an applicant to prove the petition's factual allegations,

which if true, would entitle the applicant to federal habeas relief."  Schriro v. Landrigan, 550 U.S.

465 (2007).   "It follows that if the record refutes the applicant's factual allegations or otherwise

precludes habeas relief, a district court is not required to hold an evidentiary hearing."  Id.  The

pertinent facts of this case are fully developed in the record before the Court.   Because this

Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner

v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an

evidentiary hearing will not be conducted.

## IV.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110

Stat. 1214 (hereinafter AEDPA), this Court's review "is 'greatly circumscribed and highly

deferential to the state courts.'"   Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)."

Under AEDPA, when a state court has adjudicated the petitioner's claim on the
merits,[5] a federal court may not grant habeas relief unless the state court's

---

[4]  The clerk docketed the Second Amended Petition on February 25, 2011 per the Court's Order.  (Doc. 39).  Petitioner actually placed the document in the prison mail system on December 20, 2010.  Id.

[5]  "[T]he highest state court decision reaching the merits of a habeas petitioner's claim is the relevant state court decision."  Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir. 2008). Additionally, in Harrington v. Richter, 131 S.Ct. 770 (2011), the United States Supreme Court

decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," Id. § 2254(d)(2).   A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[6]   Id. § 2254(e)(1); Ferrell v. Hall, 640 F.3d 1199, 1223 (11th Cir. 2011).

AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair minded jurists could disagree on the correctness of the state court's decision."  Harrington v. Richter, ___ U.S. ____, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).   The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error.  See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013).

---

held that § 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" The Court explained, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Id. at 784-785.

[6] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts."  Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

## V.      Timeliness:   One-Year Limitation

On April 24, 1996, the President signed into law AEDPA.   This law amended 28 U.S.C.

§ 2244 by adding the following new subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

With regard to the initial Response to the Second Amended Petition, Respondents contended that the Second Amended Petition was untimely and was time-barred unless each ground for relief related back to a ground presented in the timely filed original Petition.   (Doc. 41).   Within the analysis, Respondents asserted that the First Amended Petition was untimely filed.   Id.   By Order dated April 25, 2014, the Court directed Respondents to file a Supplement

to the Response to address the Court's determination that there was a mathematical error in Respondents' calculation regarding the filing of the First Amended Petition.   (Doc. 47).

Respondents have filed the Supplement and acknowledge that their calculation was incorrect and have provided an updated analysis.   (Doc. 48).   While Respondents concede that the First Amended Petition was timely filed, they still contend that the Second Amended Petition is untimely unless the claims relate back to the timely filed petitions.   The time-line is as follows. Petitioner's conviction and sentence became final on June 10, 2004,[7] 90 days after the First DCA affirmed *per curiam*.   The clock ran for 41 days until the period was tolled on July 22, 2004 when Petitioner filed his 3.850 motion.   (Doc. 8, Ex. D).   The state court granted the motion to dismiss the 3.850 motion on May 11, 2005.   Respondents concede that Petitioner is entitled to equitable tolling from May 11, 2005 through February 2, 2006.   (Docs. 38, 41, 48).   On February 2, 2006, Petitioner filed another motion for post-conviction relief.   (Doc. 8, Ex. F). Petitioner then filed the amended 3.850 motion on March 17, 2006.   (Doc. 8, Ex. G).   The motion was denied and the subsequent appeal was dismissed on March 2, 2007.   (Doc. 8, Exs, H, J).

The parties contend that the limitations period ran for 95 days until the dismissed appeal was reinstated on June 6, 2007.[8]   (Docs. 43, 48).   The appellate court affirmed the denial of

---

[7]See Chavers v. Sec'y, Fla. Dep't of Corr., 468 F.3d 1273, 1275 (11th Cir. 2006)(holding that entry of judgment, and not the issuance of a mandate, starts the clock running for time to petition the Supreme Court for certiorari.)

[8]The parties do not discuss whether tolling is available for the 23 days that the motion to reinstate the post-conviction appeal was pending from May 13, 2007 through June 6, 2007. Assuming *arguendo* that tolling did apply for this period, it does not impact the Court's analysis

the motion for post-conviction relief and mandate issued on November 17, 2007. (Doc. 8, Ex. M).

At this point, Respondents state that 136 days (41 days + 95 days) elapsed and 229 days remained in the limitations period.   (Doc. 48).   Respondents then assert that the period ran for 67 days before Petitioner filed his original federal habeas Petition in this Court and, therefore, the Petition was timely filed.  Id.  Respondents are correct that the filing of a Section 2254 petition does not toll the limitations period and the clock continued to tick.  See Duncan v. Walker, 533 U.S. 167 (2001).

Petitioner argues that his limitations period was tolled on February 22, 2008 because he filed another 3.850 motion in state court during the pendency of his federal case.   (Doc. 43).[9] Petitioner subsequently voluntarily dismissed the motion on July 20, 2008.   Respondents contend, and the Court agrees, that this motion did not toll the limitations period.    Pursuant to 3.850(b) of the Florida Rules of Criminal Procedure, a motion to vacate a sentence that exceeds the limits provided by law may be filed at any time, but no other motion shall be filed or considered pursuant to this rule if filed more than two years after the judgment and sentence became final.   Petitioner filed his motion after the two year period and it was, therefore, untimely

regarding the timeliness of the Second Amended Petition as discussed below.   Petitioner's limitation period expired more than 23 days before he filed the Second Amended Petition.

[9]Respondents seem uncertain as to whether the document was actually filed on February 22, 2008.   While Petitioner's document reflects that he mailed it on that date, the clerk of the court's copy does not reflect that date.   (Doc. 48).   The Court will assume that the document was filed on February 22, 2008 because the file date is not entirely relevant based on the Court's finding that the motion did not act to toll the limitations period.

filed.[10]   An untimely motion does not act as a tolling event because the motion is not "properly filed" within the meaning of 28 U.S.C. 2244(d)(2).   See Pace v. DiGuglielmo, 544 U.S. 408 (2005) (holding that a post-conviction motion rejected as untimely by a state court was not properly filed.).

Petitioner then filed his Amended Petition in this Court on June 2, 2008.   (Docs. 13, 14). Respondents concede that the Amended Petition was timely filed on day 344 of the limitations period (41 days + 95 days + 208 days).   (Doc. 48).   The limitations period expired 22 days later on Monday, June 23, 2008.   While Petitioner filed yet another 3.850 motion in state court on March 5, 2009, the court denied it as untimely and procedurally barred.   (Doc. 37, Exs. EE, FF). As stated above, an untimely motion does not toll the limitations period.   Further, a motion filed after the limitations period expires does not extend the period.   Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) (where a rule 3.850 motion is filed after the expiration of the federal limitations period, it does not toll the period because no period remains to be tolled.).

Thereafter, Petitioner filed his Second Amended Petition on December 20, 2010, which was well beyond the limitations period.[11]   Accordingly, the Second Amended Petition is untimely

---

[10]Rule 3.850(b) allows for exceptions to the two year limitations period if the facts were unknown to the movant and could not be ascertained within two years, the fundamental constitutional right asserted was not established within the period and has been applied retroactively, or counsel failed to file a 3.850 motion through neglect.   In the post-conviction motion, Petitioner challenged the court's subject matter jurisdiction, which does not appear to fall within the exception.

[11]Again, assuming arguendo that the February 22, 2008 Rule 3.850 motion was properly filed and tolled the limitations period through September 17, 2008 when the dismissal was granted, Petitioner still did not file his Second Amended Petition until December 20, 2010, which

filed and the claims are time-barred unless they "relate back" to the timely petition. Respondents concede that Grounds Three through Nine of the Second Amended Petition "relate back" and may be considered.   Petitioner concedes that Ground One is unexhausted and should be denied.   (Doc. 43, pg. 7).   Respondents argue that Ground Two does not "relate back" to the original or amended petitions.   (Doc. 48).[12]

Because the federal limitations period has expired, Respondents are correct that Petitioner can only proceed on Ground Two if it "relates back" to the original petitions. Federal Rule of Civil Procedure 15(c)(1) provides that an amendment to a pleading relates back to the date of the original pleading when the law that provides the applicable statute of limitations allows relation back; the amendment asserts a claim or defense that arose out of the conduct transaction, or occurrence set out in the original pleading; or the amendment changes the party or the naming of the party against whom a claim is asserted.

In <u>Mayle v. Felix</u>, the Supreme Court held that an amendment to a habeas petition may relate back "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts."   545 U.S. 644, 664 (2005).   A new claim does not meet the standard and, thus, does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."   <u>Id.</u> 545 U.S. at

---

is beyond the remaining time.   The limitations period would expire in January 2009.

[12]Respondents provide a discussion of whether Ground One was abandoned, but it is irrelevant.   Petitioner concedes in his Reply that the claim is unexhausted, he cannot return to state court to exhaust the claim and it should be denied.   (Doc. 43, pg. 7).

650.  The terms "conduct, transaction, and occurrence" are to be narrowly construed and are not synonymous with "trial, conviction or sentence."  Id. 545 U.S. at 664.

In Ground Two, Petitioner argues that the trial court lacked subject matter jurisdiction to "preside and pass judgment and sentence in the mentioned cases due to fraud on the Court." (Docs. 34, 39, 43).[13]   Petitioner alleges that the information was signed by Monica L. Hentschel, who was never duly designated as an assistant state attorney.  Id.  Petitioner contends that the information is, therefore, "null and void" and the conviction should be vacated.  Id.  Petitioner states that the signature was so deficient that it deprived the state court of jurisdiction.  Id.  Petitioner argues that Florida courts have held that issues of fraud and subject matter jurisdiction can be raised at any time without the showing of cause or "justify failure to raise the issue in an earlier proceeding."  Id.

Ground Two of the Second Amended Petition does not relate back to the original petitions. Petitioner raised no claims regarding the trial court's subject matter jurisdiction in the earlier petitions.  Petitioner's new claim relies on facts differing from those in the original pleadings. The Court rejects Petitioner's argument that he has based his claim on fraud and subject matter jurisdiction, which can be raised at any time.  While the issue of this Court's federal subject matter jurisdiction can be raised at any time, this is not what Ground Two raises.  Rather, it addresses the state court's subject matter jurisdiction over the criminal case.  The Court is not aware of any law that allows Petitioner to circumvent the limitations period based on these

---

[13]The memorandum in support of the Second Amended Petition is attached to Doc. 34.

arguments.   Further, Petitioner has failed to demonstrate that he is entitled to equitable tolling with respect to this claim, or that the fundamental miscarriage of justice or actual innocence exception to avoid the time bar of this claim is applicable.

Even if the claim is not untimely, it is barred from review because it was not properly exhausted in state court.   To satisfy the exhaustion requirement, a state petitioner must fairly present the federal claims to the state courts to give the state the opportunity to pass upon and correct alleged violations of its prisoner's federal rights.  O'Sullivan v. Boerckel, 526 U.S. 838 (1999).   A full and fair opportunity involves the proper presentation, and substance of, the federal constitutional claim.  Watson v. Dugger, 945 F.2d 367, 371-372 (11th Cir. 1991).

Here, Petitioner raised this claim for the first time in his March 5, 2009 post-conviction motion, which was denied as untimely and procedurally barred.   (Doc. 37, Exs. EE, FF).  A claim which was not properly brought in state court does not act to exhaust state remedies.   An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is also considered procedurally barred from federal review.  See Bailey v. Nagle, 172 F.3d 1299 (11th Cir. 1999).   To overcome the procedural default such that the federal habeas court may consider the merits of the claim, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).   Here, Petitioner has not established that cause and prejudice exist, nor has he shown that there would be a fundamental miscarriage of justice if the Court did not consider the claim.   As such, the claim is barred from review assuming Petitioner could get past the hurdle of the timeliness impediment.

**VI.  Findings of Fact and Conclusions of Law**

**A.  Ineffective Assistance of Counsel Claims**

In Grounds Three, Four, Six, Seven, Eight and Nine, Petitioner raises ineffective assistance of counsel claims.  To state a successful ineffective assistance of counsel claim, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that the attorney's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668 (1984).  Both prongs must be shown in order to succeed on an ineffective-assistance claim.  Further, to prove prejudice, a Petitioner must show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors.

When reviewing an ineffective assistance of counsel claim, the court's role "is not to grade counsel's performance;" instead, the court's role is to conduct an objective inquiry and determine "whether counsel's performance [was] reasonable under prevailing professional norms." Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (internal quotations and citation omitted).  Therefore, "[j]udicial scrutiny of counsel's performance must be highly deferential."  Id. at 1314.  "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."  Id.  "Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy."  Id.  (quoting Darden v. Wainwright, 477 U.S. 168 (1986)).  To overcome the strong presumption in favor of competence, the petitioner bears the burden of establishing

13

"that no competent counsel would have taken the action that his counsel did take."   Id. at 1314-15.

Federal review of a state court's adjudication of an ineffectiveness claim is "doubly" deferential.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at ——, 129 S.Ct. at 1420.

Harrington v. Richter, 131 S.Ct. 770, 788 (2011).

### 1.    Ground Three

In Ground Three, Petitioner contends that his counsel rendered ineffective assistance when he misadvised Petitioner that "even if he was found guilty, the conviction would be overturned because the Prison Releasee Reoffender Act would be found unconstitutional." (Doc. 39).   Petitioner alleges that his counsel, therefore, advised him to reject the plea offer of 15 years.   Id.   Petitioner states that he would have accepted the plea but for counsel's advice. Id.   Petitioner raised this claim in state court in his amended 3.850 motion.   The trial court rejected the claim.   (Doc. 8, Ex. H).   The court found that in its response the state affirmatively showed that no offer of 15 years was ever made to Petitioner in his case or even his other pending criminal case.   Id.   The court stated that the record was devoid of any indication that the state had attempted to negotiate a 15 year disposition.   Id.

To the contrary, the court found that "it is absolutely preposterous to find any credibility in the [Petitioner's] proposition that the state would offer a 15 year sentence to a defendant recently

14

released from prison who conducted such a violent and harmful crime spree." Id.   The court noted that Petitioner faced three life sentences, all of which could run consecutively, even if the Habitual Felony Offender statute and the Prison Releasee Reoffender statute had never been written.   Id.   The court found that Petitioner's claim was conclusively refuted by the record, was "unworthy of belief," and the claim was without merit.   Id.   The court also found that the amended petition was due to be denied in its entirety because Petitioner failed to demonstrate prejudice.   Id.   The First DCA *per curiam* affirmed the summary denial of post-conviction relief. (Doc. 8, Ex. M).   Petitioner argues that the trial court erred because his claim was sufficient, was not refuted by the record and warranted an evidentiary hearing.   (Docs. 39, 43).

Upon due consideration, Petitioner has failed to show that the state courts' determination that his counsel was not ineffective was contrary to, or an unreasonable application of, federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.   The Court agrees that the record refutes Petitioner's argument regarding the offer.   (See Doc. 29, Ex. R).

Even if the plea offer did exist, in order to succeed on this claim Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial."   Coulter v. Herring, 60 F.3d 1499 (11th Cir. 1995). Although Petitioner claims that he would have accepted the plea if he was not "misadvised," the Eleventh Circuit has held that "after the fact testimony concerning a desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer."   Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991).   There is

nothing to support Petitioner's assertion that he would have accepted the plea assuming that one was offered.

### 2.   Ground Four

In Ground Four, Petitioner argues that his counsel was ineffective because he failed to redact portions of "unverified letters" that referred to a robbery that was not at issue at the criminal trial "despite the trial court's inquiry whether there were any portions counsel wished to have redacted." (Doc. 39).   Petitioner presented this claim in state court in his amended 3.850 motion.   The state court rejected the claim finding that it was refuted by the record.   (Doc. 8, Ex. H).   The court found that the claim itself acknowledges that counsel objected to the introduction of the letters.   Id.   The court overruled the objection and admitted the letters.   Id.

The court also stated that the claim was cognizable on direct appeal and, therefore, could not be raised in his motion for post-conviction relief.   Id.   Regardless of the procedural defect, the court found that an examination of the trial transcript conclusively showed that the admissions contained in Petitioner's letters to his girlfriend related to the robbery/sexual battery charges which were at issue at trial and were argued as such by the state.   Id.; See letters at Doc. 29, Exs. O, R.   The court stated that "it was not argued or implied in any way that these admissions related to a separate crime." (Doc. 8, Ex. H).   Further, the court found that the motion for post-conviction relief failed in its entirety because the jury trial was "marked by an overwhelming flood of evidence of [Petitioner's] guilt." Id.   The First DCA *per curiam* affirmed the summary denial of post-conviction relief.   (Doc. 8, Ex. M).   Again, Petitioner contends that the record does not refute his claim and the state court should have conducted an evidentiary

hearing.   (Docs. 39, 43).

Upon due consideration, Petitioner has failed to show that the state courts' determination was contrary to, or an unreasonable application of, federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.   The trial court's adjudication of this claim and the appellate court's affirmance of the denial of the claim were not contrary to <u>Strickland</u>.   Petitioner failed to demonstrate that his attorney's performance fell below an objective standard of reasonableness or that his performance prejudiced the defense.

### 3.   Ground Six

In Ground Six, Petitioner argues that his counsel was ineffective for failing to object and move for a mistrial when the state posed an improper question that directly violated Petitioner's right to remain silent.   (Doc. 39).   Petitioner raised this claim in his amended 3.850 motion. (Doc. 8, Ex. G).   Petitioner's allegations are based on the following comments made during the state's cross-examination of Petitioner.

> Q: Sir, my name is Julie Agent, I am an Assistant State Attorney.   You and I have never spoken, have we?
> A: No, ma'am
> Q: Sir, you have been aware since your first court appearance what the charges were against you, correct?
> A: Yes, ma'am
> Q: And also each witness that took the stand yesterday actually gave what they called a deposition, correct, Sir?
> A: Yes.
> Q: And in the depositions they are questioned by your attorney, and I realized you had two different attorneys, but whoever was representing you at the time would have questioned them about the events and about what they would have testify to, correct?
> A: Yes.

> Q: You have read all of the depositions, Sir?
> A: Yes.

(Doc. 29, Ex. O).

Petitioner contended in his 3.850 motion that the fact that the prosecutor had not spoken to him prior to trial was because the prosecutor was prohibited from speaking with him without his attorney's approval.   (Doc. 8, Ex. G).   Petitioner argued that when the prosecutor informed the jury that all of the state's witnesses had given a deposition, the statement informed the jury that Petitioner had not given a deposition because the jury was aware that he had not previously spoken with the prosecution.   Id.

The trial court rejected this claim finding that the prosecutor's statement and inquiry did not constitute misconduct and was not an improper comment on Petitioner's right to remain silent.   (Doc. 8, Ex. H).   The court found that counsel was not ineffective for failing to object to comments that were not improper or evidence that was admissible.   Id.   The court also found that even if trial counsel objected to the first statement by the prosecutor and the court sustained the objection, the comments would not have required a mistrial considering the weight of all of the evidence.   Id.   The First DCA *per curiam* affirmed the summary denial of post-conviction relief.   (Doc. 8, Ex. M).

Petitioner argues in his Memorandum that a "case can hardly be 'strong' when all the physical evidence comports with the defense and contradicts the prosecutions stuttering witnesses who were both high and drunk on the night of the alleged crime."   (Doc. 34-2).

Upon due consideration, Petitioner has failed to show that the state courts' determination

18

that his counsel was not ineffective was contrary to, or an unreasonable application of, federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

### 4.   Ground Seven

In Ground Seven, Petitioner argues that his counsel was ineffective because he failed to object to "numerous improper comments and arguments made by the state during closing arguments." (Doc. 39).   Petitioner states that the prosecution ridiculed him, appealed to "passions," bolstered the credibility of witnesses and misrepresented the law.   Id.   Petitioner also alleges that the prosecution improperly argued to the jury that Petitioner's counsel was disingenuous.   (Doc. 34-2).

While Petitioner raises this claim based on an ineffective assistance of counsel argument, it also appears that Petitioner is attempting to assert that the prosecution's comments rendered his trial unfair and violated his due process rights.   See Docs. 34-2, 39).   Indeed, in his Reply to the Response, Petitioner asserts that he argued the due process claim in state court.   (Doc. 43).   Respondents contend, and the Court agrees, that Petitioner did not argue a violation of due process in state court, and only raised the issue as part of his ineffective assistance of counsel claim.   (Doc. 41).   Petitioner, through counsel, only argued that he was entitled to relief because his counsel failed to raise objections.   (See Doc. 8, Ex. G).

Petitioner's state court ineffective assistance of counsel claim is not the same as a due process challenge to the prosecution's conduct.   The two claims are separate and distinct for purposes of satisfying the exhaustion requirement.   Pietri v. Fla. Dep't of Corr., 641 F.3d 1276

(11th Cir. 2011) (holding that federal habeas petitioner's substantive judicial bias claim was not the same claim as his ineffective assistance of counsel claim based on counsel's failure to raise the substantive claim); see also LeCroy v. Sec'y, Fla. Dep't Corr., 421 F.3d 1237, (11th Cir. 2005) (noting that the substantive claim is distinct from the ineffective assistance of counsel claim).   The Supreme Court has held that a claim for ineffective assistance of counsel and an underlying claim are separate, independent claims that must both be preserved.   See Edwards v. Carpenter, 529 U.S. 446 (2000).

Further, even if Petitioner's state claim can be interpreted to include the due process argument, claims of prosecutorial misconduct could and should have been raised on direct appeal and, thus, are procedurally barred from consideration in a post-conviction motion. Spencer v. State, 842 So.2d 52, 60 (Fla. 2003).   Petitioner did not raise this claim in his direct appeal.   In fact, the state post-conviction court noted in its analysis that prosecutorial misconduct was an issue of fundamental due process and was cognizable on direct appeal. (Doc. 8, Ex. H).

Accordingly, Petitioner's due process claim is unexhausted and was not properly presented to the state court.    Petitioner cannot return to state court to exhaust his due process claim and it is, therefore, procedurally defaulted.   Petitioner has failed to demonstrate cause and prejudice or actual innocence that would excuse the default.

Even if Petitioner's apparent due process claim is exhausted, the claim is due to be denied.   Within the trial court's rejection of Petitioner's ineffective assistance of counsel claim, the court found that none of the prosecution's objected to "statements [rose] to the level required"

for relief under Florida law.   (Doc. 8, Ex. H).   The First DCA *per curiam* affirmed the summary denial of post-conviction relief.   (Doc. 8, Ex. M).   Petitioner has failed to show that the state courts' determination was contrary to, or an unreasonable application of, federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

Petitioner's ineffective assistance of counsel argument found in Ground Seven is also due to be denied.   The trial court rejected the claim, in part, as conclusively refuted by the record.   (Doc. 8, Ex. H).   The court found that counsel's failure to object did not render ineffective assistance because the prosecution's statements were not improper.   Id.   Further, the court denied the state motion in its entirety because it failed under Strickland.   Id.

Petitioner has failed to show that the state courts' determination that his counsel was not ineffective was contrary to, or an unreasonable application of, federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

### 5.    Ground Eight

In Ground Eight, Petitioner argues that his counsel rendered ineffective assistance because he failed to request that the state court give the "accomplice jury instructions."   (Doc. 39).   Petitioner alleges that Kish Roberts was an accomplice and the failure to request the instruction prejudiced Petitioner "where the only evidence of alleged guilt depended entirely on how the jury viewed credibility of the witnesses."   Id.

The trial court rejected this claim.   (Doc. 8, Ex. H).   The trial court acknowledged that

the state record reflects that the instruction was not requested nor given.  Id.  However, the court found that the trial transcript "clearly reveals that defense counsel at trial fully and effectively argued all of the facts and issues involved in the law pertaining to accomplice testimony without objection by the state and without interference from the court."  Id.  The court stated that all of the issues related to accomplice testimony were argued and rejected by the jury.  Id.  Accordingly, the court found that prejudice was not established.  Id.

Further, the court found that the fact that Mr. Roberts' testimony was "completely consistent with that of the six eyewitnesses, the testimony of the police, the admissions by the defendant, and the physical DNA evidence admitted during the trial, render[ed] the absence of the instruction, at most, harmless error."  Id. The First DCA per curiam affirmed the summary denial of post-conviction relief.   (Doc. 8, Ex. M).

Petitioner argues that counsel's arguments were not an adequate substitute for the omitted jury instruction and the court could not make "credibility determinations."   (Doc. 34-2).

Upon due consideration, Petitioner has failed to show that the state courts' determination that his counsel was not ineffective was contrary to, or an unreasonable application of, federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.   The record supports the trial court's determinations regarding counsel's arguments to the jury.  (See Doc. 29, Ex. O, pgs. 616, 619).   The record also demonstrates that the trial court instructed the jury to decide if the evidence was reliable, including witness testimony.   (Doc. 29, Ex. O, pgs. 658, 660). The court instructed the jury to consider whether the witness was honest and straightforward in answering the attorney's

questions; whether the witness had some interest in how the case should be decided; and whether the witness had been offered or received any money, preferred treatment or other benefit in order to get the witness to testify.  Id.  Further, the court instructed the jury that they may rely upon their own conclusions about a witness.  Id.

      **6.**    **Ground Nine**

      In Ground Nine, Petitioner argues that his counsel was ineffective because he "failed to object (and preserve for direct appeal) a compound jury instruction of robbery and confusing jury verdict form that allowed for a guilty verdict on a less than unanimous verdict."  (Doc. 39). Petitioner also argues in his Memorandum that his appellate counsel failed to argue on direct appeal that the armed robbery instruction and verdict form constituted a fundamental error. (Doc. 34-2).

      Petitioner raised these claims in his amended 3.850 motion.  (Doc. 8, Ex. G).  With respect to Petitioner's argument that his trial counsel was ineffective, Petitioner claimed that his counsel should have objected to the use of "and/or" in the jury instruction when referring to the two victims in the robbery.  Id.  The trial court rejected the claim and found that the authority Petitioner relied upon was inapposite to his case and the jury instructions were lawful and correct and did not give rise to any sustainable objection by defense counsel.  (Doc. 8, Ex. H).

      As the United States Supreme Court has made clear, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  Middleton v. McNeil, 541 U.S. 433 (2004).  In order to warrant habeas relief, the petitioner faces the substantial burden of establishing that the "ailing instruction by itself so infected the entire trial

that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145 (1977). Indeed, it is not enough to show merely that the instruction was "undesirable, erroneous, or even universally condemned." Id. A challenged instruction should not be viewed in isolation, but in the context of the entire charge as well as the entire trial record. Agan v. Vaughn, 119 F.3d 1538 (11th Cir. 1997).

Here, while the state court's use of the conjunction might not have been desirable, Petitioner has not shown that the state courts' determination that his counsel was not ineffective for failing to object to its use in the instruction was contrary to, or an unreasonable application of, federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. Petitioner cannot show a reasonable probability that the outcome of his case would have been any different had counsel objected to the instruction.

With respect to Petitioner's argument that his appellate counsel was ineffective, the trial court rejected the claim because this type of argument should not have been raised in trial court. (Doc. 8, Ex. H). Indeed, the claim was not brought in the proper forum. Claims of ineffective assistance of appellate counsel must be raised in the appellate court and not in the trial court. Thompson v. State, 759 So.2d 650 (Fla. 2000). As such, the claim was rejected as not properly presented in state court and it is procedurally defaulted. Petitioner cannot return to state court to properly pursue the claim and he has failed to demonstrate cause and prejudice or actual innocence that would excuse the default.

Assuming that the claim is not procedurally defaulted, Petitioner has not demonstrated

that appellate counsel provided ineffective assistance for failing to raise this claim.   Claims for ineffective assistance of appellate counsel are governed by the same standard applied to trial counsel under <u>Strickland</u>.   <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). Petitioner has not established that he was prejudiced by counsel's action or inaction.

### B.    Ground Five

In Ground Five, Petitioner argues that the state committed a <u>Giglio</u> and <u>Brady</u> violation by not disclosing that its witness was promised an "extremely lenient plea bargain in exchange for inculpatory statements against Petitioner at trial."  (Doc. 39).   Petitioner alleges that after his conviction his co-defendant, Kish Roberts, wrote a letter to his aunt and informed her that the state had promised him that they would agree to sentence him to time served if he testified against Petitioner.   <u>Id.</u>   Petitioner states that "Mr. Roberts indicated that the state advised Mr. Roberts to testify at trial that the state had not promised Mr. Roberts anything."   <u>Id.</u>

The trial court rejected the claim and found that the record showed that Mr. Roberts testified that his sentence had not been determined, the judge would ultimately decide what his sentence would be and that it included the possibility of up to life imprisonment.   (Doc. 8, Ex. H).   The court found that the record was "crystal clear" that Mr. Roberts did not receive a time-served disposition and that he was serving a 5 year sentence.   <u>Id.</u>

Further, the court found that the "affidavit" attached to the post-conviction motion was not sworn nor identified as being authored by Mr. Roberts in any "legally acceptable form."   <u>Id.</u> Moreover, the court found that neither the "affidavit" nor the motion itself raised any suggestion that Mr. Roberts' testimony about Petitioner's commission of the crimes was untruthful.   <u>Id.</u>

Accordingly, the court found that Petitioner's claim was refuted by the record and was legally insufficient on its face.   Id.   The First DCA *per curiam* affirmed the summary denial of post-conviction relief.   (Doc. 8, Ex. M).

Petitioner argues that even though Mr. Roberts ultimately received 5 years, the sentence is a "far cry from life in prison."  (Doc. 34-2).   Petitioner argues that he was entitled to an evidentiary hearing to determine whether or not the letter was "newly discovered evidence;" whether the state committed a Giglio violation; and whether the evidence impeached Mr. Roberts.   Id.

Petitioner has failed to show that the state courts' determination that his counsel was not ineffective was contrary to, or an unreasonable application of, federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.   To prove a Giglio violation, a petitioner must establish the following elements: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material; i.e., that there is any reasonable likelihood that the false testimony could have affected judgment.   Trepal v. Sec'y, Fla. Dept. of Corr., 684 F.3d 1088, 1107-1108 (11th Cir. 2012) (internal citation omitted).   A Giglio error, which is a "species of Brady error," exists when the "undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew or should have known of the perjury."   Ventura v. Att'y Gen., 419 F.3d 1269 (11th Cir. 2005) (quoting United States v. Agurs, 427 U.S. 97 (1976)).

At trial, Mr. Roberts's testimony was as follows:

> Q: Have you pled guilty to any charges, sir?
> A: Yes

Q: What did you plead guilty to?
A: Armed robbery.
Q: Was that here in adult court?
A: Yes.
Q: Before this very Judge that now sits next to you?
A: Yes.
Q: And what is the possible sentence you could receive, sir?
A: Zero to life.
Q: Up to life imprisonment, sir?
A: Yes.
Q: Who will ultimately decide what happens to you?
A: Judge Arnold.
Q: Will I make a recommendation, sir, to the Judge?
A: Yes.
Q: That's what you understand?
A: Yes.
Q: Do you understand that's non-binding on Judge Arnold?
A: Yes.
Q: Did you agree to testify truthfully?
A: Yes.
Q: And for that we have agreed to drop that sexual battery charge, correct?
A: Yes.

(Doc. 29, Ex. O, pgs. 434-436).

The state court's factual determination regarding Mr. Roberts' testimony is in accordance with the record.   Further, the record supports the court's finding that Mr. Roberts was not sentenced to time–served, but to 5 years in prison.   (Doc. 8, Ex. H; Doc. 29, Exs. R, S). Moreover, the court's finding that the "affidavit" to the motion was not sworn to nor identified as being authored by Kish Roberts in any legally acceptable form was not unreasonable.   The 3.850 motion includes an undated letter signed by a "Kish" and the letter is unsworn.   (Doc. 8, Ex. F).   It is clear that the court was referring to this letter when it found that it was in an unacceptable format.   (Doc. 8, Ex. H).   Petitioner also attached Mr. Roberts' aunt's "affidavit" in which she swears that she received the letter from Mr. Roberts.   (Doc. 8, Ex. F).   Assuming

*arguendo* that Mr. Roberts' statements contained within the letter were true, the court reasonably found that there was no suggestion that Mr. Roberts' trial testimony regarding Petitioner's crime was untruthful.

## VII.   Conclusion

Petitioner concedes that Ground One of the Second Amended Petition is due to be dismissed.   Ground Two does not relate back to the timely filed petitions and is untimely.   The claim is also unexhausted and procedurally barred.   With respect to Grounds Three through Nine, Petitioner has failed to demonstrate that he is entitled to habeas relief.

Further, Petitioner's apparent contention that his rights were violated because the trial court ruled without an evidentiary hearing is also without merit.   The trial court adequately found that Petitioner's claims were refuted by the record.   In Spradley v. Dugger, 825 F.2d 1566 (11th Cir. 1987), the petitioner argued that the state court violated his due process rights when it denied his Rule 3.850 motion without conducting an evidentiary hearing and attaching those portions of the record in denying relief.   The Eleventh Circuit Court of Appeals held that the state court's alleged errors did not undermine the validity of petitioner's conviction; therefore, the claim went to issues unrelated to the cause of petitioner's detention, and it did not state a basis for habeas relief.   Id. at 1567; see also Alston v. Dep't of Corr. of Fla., 610 F.3d 1318 (11th Cir. 2010)(finding that because state "collateral proceedings are a state created right," the petitioner's "challenge to the state post-conviction proceedings does not provide a basis for federal habeas relief.").   Accordingly, if Petitioner is alleging error in the state-conviction review process, his claim is not cognizable.

Therefore, it is now:

**ORDERED AND ADJUDGED:**

1.      The Second Amended Petition (Doc. 39) is **DENIED**, and this action is

**DISMISSED WITH PREJUDICE.**

2.      The Clerk of the Court shall enter judgment denying the Second Amended Petition

and dismissing the case with prejudice and close the case.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability.

Because this Court has determined that a certificate of appealability is not warranted, the Clerk

of the Court shall terminate from the pending motions report any motion to proceed on appeal

as a pauper that may be filed in this case.  Such termination shall serve as a denial of the

motion.

DONE and ORDERED at Jacksonville, Florida this 30th day of July, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

Copies to:    Petitioner
              Counsel of Record